FILED

2014 Oct-14  AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN JEFFERSON, as the personal representative of the Estate of Tanisha  Jefferson, | ) ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| MADISON COUNTY, ALABAMA; BLAKE DORNING; STEVE MORRISON; ADVANCED CORRECTIONAL HEALTHCARE, INC.; ARTHUR M. WILLIAMS, M.D.; MARY ANN JONES; DARLYN FLORENCE; DOUGLASS SMITH; TAMMY MASON; and MICHELLE KIRK, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Carolyn Jefferson complains of defendants, stating as follows:

### Nature of the Action

1.      This is a civil action brought by Carolyn Jefferson, whose decedent,

Tanisha Jefferson, was denied certain constitutional rights by defendants while

incarcerated in the Madison County Jail.  Specifically, defendants were deliberately

indifferent to Tanisha Jefferson's  serious medical needs in violation of her  rights as

a pretrial detainee under the Fourteenth Amendment to the United States Constitution. Plaintiff also brings state law claims against the health care defendants.

## Jurisdiction and Venue

2.      This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3.      This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

## Parties

4.      Carolyn Jefferson  is of legal age and a citizen and resident of the state of Alabama.  She resides in Madison County, Alabama.

5.      Defendant Madison County, Alabama is an Alabama county.  It is responsible for funding the Madison County Jail, including medical care at the jail. It contracted with defendant Advanced Correctional Healthcare, Inc. to provide medical services at the Madison County Jail.

6.      Defendant Blake Dorning was the Madison County Sheriff at all relevant times.  As the sheriff, among other things, he is responsible for management of the Madison County Jail.  Defendant has a statutory duty under Alabama law to attend

to the medical needs of inmates in the Madison County Jail. He is sued in his individual capacity only.

7.     Defendant Steve Morrison served as the jail administrator of the Madison County Jail at all relevant times. He is sued in his individual capacity only.

8.     Defendant Advanced Correctional Healthcare, Inc. (ACH) is a private for-profit corporation that is under a contractual obligation to provide medical care for inmates in the Madison County Jail.

9.     Defendant Norman R. Johnson , M.D. is a physician who serves as the CEO of ACH. He is sued in his individual capacity only.

10.    Defendant Arthur M. Williams, M.D. is a physician who was employed by ACH to provide physician medical services and to be the director of the medical program for inmates at the Madison County Jail.

11.    Defendant Mary Ann Jones is a Licensed Practical Nurse employed by ACH to provide nursing services at the Madison County Jail at all relevant times. She is sued in her  individual capacity only

12.    Defendant Darlyn Florence is a Registered  Nurse Practitioner who was employed by ACH to provide nursing and medical services for inmates at the Madison County Jail at all relevant times.

13.    Defendant Douglass Smith is a Licensed Practical Nurse who was employed by ACH to provide nursing services for inmates at the Madison County Jail

at all relevant times.

14.     Defendant Tammy Mason is a Licensed Practical Nurse who was employed by ACH to provide nursing services for inmates at the Madison County Jail at all relevant times.

15.     Defendant Michelle Kirk is a Licensed Practical Nurse who was employed by ACH to provide nursing services for inmates at the Madison County Jail at all relevant times.

## Facts

16.     Tanisha Jefferson was arrested at her home on October 14, 2013 and booked into the Madison County Jail.

17.     On October 31, 2013, Jefferson died as a result of complications related to a bowel obstruction most likely caused by an extended period of constipation (at least 13 days on the date of her death).

18.     Jefferson died as a result of defendants' failure to refer her to a hospital for evaluation and treatment.

19.     Because of Jefferson's extended period of constipation, her severe abdominal pain, and other "alarm" symptoms (see below), by October 29, 2013, all of the individual ACH defendants were aware that Jefferson may have a bowel obstruction, which is a life-threatening condition.

20.    Each of the individual ACH defendants worked in the medical department at the Madison County Jail, were aware of Jefferson's condition on or after October 29, 2013, and the risk to her life, yet took no action.

21.    Throughout Jefferson's incarceration she made numerous complaints of stomach pain and the inability to have a bowel movement.

22.    Beginning on October 19, 2013, Jefferson complained of rectal and abdominal pain.

23.    Jefferson made numerous requests to see the doctor (defendant Williams) and filed at least one medical grievance, on October 25, 2014, complaining that she had been sick for 10-11 days.

24.    In an October 28, 2014, request to see the doctor, she made clear she feared for her life, stating that if something happened to her it was on jail and medical personnel.

25.    When Jefferson finally saw Williams on October 29, 2013, he misrepresented her condition in his note, among other things, completely omitting Jefferson's "alarm" symptoms, including her severe and worsening abdominal pain, lack of appetite (for days), rectal pain, and vomiting.

26.    According to readily-available and reliable online medical information, including the information attached as Exhibits 1-3, even one such "alarm" symptom required further evaluation, including diagnostic testing at a minimum, and could not

5

be safely addressed by a repeat laxative prescription.

27.     Jefferson's symptoms on October 29, 2013, clearly indicated a potentially life-threatening problem, such as a bowel obstruction.  Nevertheless, Williams just prescribed laxatives and sent Jefferson back to her cell.  He did not even do a rectal exam, which is a standard diagnostic tool for such issues.

28.     By October 29, 2013, at the latest, the individual defendants except Dorning and Morrison were aware that Jefferson had not had a bowel movement in at least 13 days, that she was having stomach pain so bad she told fellow inmates and jail staff (Williams, the nurses, and correction officers) she thought she would explode, that she was so weak and in pain she could hardly walk.

29.     From at least October 29, 2013, until her death on October 31, 2013, it was obvious to all that came in contact with Jefferson that her condition was serious and that she needed to go to a hospital for evaluation and treatment.

30.     On October 30, 2013, Jefferson took another turn for the worse.  She started sweating and started having difficulty breathing.  ACH personnel, including Williams, were informed of Jefferson's condition, yet did nothing.

31.     Jefferson saw an unidentified ACH nurse in the early morning hours on October 31, 2013, reported her deteriorating condition, but was sent back to her cell.

32.     By the morning of October 31, 2013, Jefferson was disoriented.  ACH personnel, including at least defendants Williams, Jones, Mason, Smith, and Florence,

were informed regarding Jefferson's early morning visit to the nurse and Jefferson's further deterioration since then. Nevertheless, Jefferson was not taken to the hospital. At approximately 8:40 p.m. on October 31, 2013, Jefferson passed out in her cell, complaining of even more extreme abdominal pain. Even then Jefferson was not sent to the hospital. Instead, she was taken by wheelchair to the medical department for observation. An ambulance was not called until Jefferson became nonresponsive around 9:09 p.m. By that time, it was too late.

33.    By October 29, 2013, all of the individual defendants except for Dorning and Morrison were aware of Jefferson's condition yet failed to act appropriately. Jefferson was obviously suffering from a serious problem of a potentially life-threatening nature.

34.    Due to her extended period of constipation, severe abdominal pain, and other "alarm" symptoms, Jefferson's need for evaluation and treatment in a hospital was such that it would have been obvious even to a layperson.

35.    Despite Jefferson's condition, Jefferson received no effective treatment; defendants just watched Jefferson's condition deteriorate until she died.

36.    As a direct and proximate result of the failure and refusal of the individual defendants except Dorning, Morrison, and Johnson to refer Jefferson for evaluation and treatment in a hospital, Jefferson suffered pain and suffering and eventually died.

7

37.    All defendants were jointly and severally the proximate cause of Jefferson's pain and suffering and eventual death.

38.    Moreover, pursuant to a policy and practice of Madison County, Dorning, ACH, Johnson, and Williams prohibiting narcotic pain medication for inmates, Jefferson's severe pain during the days before she died was completely ignored.   Pursuant to this policy and practice Jefferson received no effective medication for her pain.

39.    The actions of jail and ACH personnel indicate systemic breaches of fundamental standards of correctional management and correctional health care.

40.    These breaches are indicative of inadequate policies and practices and inadequate training and supervision.

41.    The treatment of Jefferson falls far below the standard of correctional health care.

42.    Because Jefferson was not appropriately treated, she experienced unnecessary pain and suffering and eventually died.

43.    All of the individual defendants identified above acted with malice and/or with reckless disregard for Jefferson's constitutional rights.

44.     Jefferson's serious medical needs were ignored because of the customs or policies of defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH of deliberate indifference to the serious medical needs of prisoners in the

Madison County Jail.

45.     With deliberate indifference to the serious medical needs of inmates, defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH failed to develop and implement adequate policies and procedures for the handling of inmates with serious health conditions and failed to adequately train jailers and medical staff, with the foreseeable result that inmates such as Jefferson would not receive appropriate treatment.

46.     More generally, defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH have established deliberately-indifferent customs or policies concerning inmate medical care, including but not limited to a custom or policy of delaying or denying necessary medical treatment to avoid liability for inmate medical bills.

47.     Defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH were also part of an explicit or implicit agreement or plan to delay or deny necessary medical care to avoid having to pay for medical care for the inmate.  This plan included a custom or policy of delaying or denying necessary medical treatment by outside providers.  Defendants were aware this policy created a substantial risk of serious harm and inflicted unnecessary pain and suffering on inmates.

48.     Defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH were on notice that the above-described customs or policies regarding

medical care for inmates were harmful to the health of inmates and caused them to experience unnecessary pain and suffering due to delay and denial of necessary medical care. Defendants had such knowledge from prisoner complaints, communications from jailers, from their own observations, from common sense, from other deaths, from other lawsuits, and in other ways.

49.     During 2013 at least 2 other inmates died while in the Madison County Jail under similar circumstances, Deundrez Woods (date of death August 21, 2013) and Nikki Listau (date of death March 12, 2013).

50.     Woods experienced a severe and sudden change in mental functioning in late July 2013, was moved into an observation cell on August 6, 2013, and continued to deteriorate from August 6 until his death on August 19, 2013.  For the last several days in jail, Woods was unable to stand and was completely incoherent. Woods was suffering from the effects of gangrenous right foot.  His mental status change was due to that infection, and he ultimately died from a blood clot that originated in his gangrenous foot.  For approximately three days, while being checked every 15 minutes, Woods went from incoherent to barely responsive to dead, all the while receiving no medical treatment.

51.     The circumstances of Listau's death are described in the first amended complaint filed in that case (No. 5:14-CV-1309-CLS).

52.     To a large extent, these constitutionally-deficient policies and practices

10

regarding inmate medical care were created and implemented by the agreement between Madison County, Dorning, and ACH.

53.     The agreement, among other things, requires ACH to provide substantial insurance coverage, to name the county and the sheriff as additional insureds, and to indemnify the sheriff, the county, and their agents and employees in connection with any claim related to health care services.

54.     In whole or in part because of the agreement, Madison County, Dorning, and Morrison have failed and refused to address known systemic deficiencies regarding medical care at the Madison County Jail.

55.     Under the agreement, for Madison County to avoid liability for excess medical care expenses, it was necessary for defendants Dorning and Morrison and the jailers they managed to cooperate with ACH in controlling costs.

56.     Defendants Madison County and ACH and all individual defendants were aware the cost control measures implemented at the Madison County Jail by ACH resulted in the denial of constitutionally-required medical care for inmates with serious medical needs such as Listau.

57.     ACH's business model, reflected in the agreement, succeeds by underbidding the competition and implementing severe cost control measures, the necessary result of which is unnecessary inmate suffering and liability claims (dealt with through liability insurance).

11

58.    The primary areas in which cost control measures were implemented were staffing, medications, and referrals to outside providers.

59.    In order to control costs, defendant ACH, with the knowledge and consent of defendants Madison County, Dorning, and Morrison, staffed the Madison County Jail inadequately, hired sub-standard medical personnel willing to put costs over inmate health and safety, denied inmates medications, and delayed or denied medically-necessary referrals to outside providers, including necessary medical treatment like that denied Jefferson.

60.    Alabama law vests final policymaking authority for inmate medical care in Dorning, as the representative of Madison County.

61.    Defendants Madison County and Dorning, in turn, via the agreement with ACH, have delegated final policymaking authority regarding inmate medical care to ACH, and, therefore, they are liable for ACH decisions.

62.    While the agreement gives Dorning and Madison County authority to hold ACH accountable regarding the costs of inmate health care, it provides no mechanism for reporting and accountability regarding the quality of inmate health care, and neither Dorning nor Madison County have made any effort to hold ACH accountable for how it handles inmate health care.

63.    To the contrary, Dorning and Morrison have trained jail personnel to defer to ACH regarding medical matters and, as a matter of policy and practice, to

assist ACH in controlling costs by having individuals who need outside treatment released from jail and by allowing ACH to make all decisions regarding referrals to outside providers, including emergency room referrals.

64.    Defendant ACH acted through one or more individuals who acted as final policymakers for ACH, including defendant Williams.

65.    Defendant Madison County caused or contributed to the above-described customs or policies by not providing adequate funds for medical treatment for the prisoners in its custody, by continuing to retain ACH despite knowledge of ACH's policies and practices, and in other ways.

66.    All defendants acted jointly and in concert with each other. Each defendant had the duty and the opportunity to protect Jefferson, to obtain necessary medical treatment for Jefferson in a timely manner and/or to establish policies and procedures and implement training regarding such treatment, but each defendant failed and refused to perform such duty, thereby proximately causing Jefferson's pain and suffering and eventual death.

67.    All defendants, acting under color of state law, inflicted or caused to be inflicted cruel and unusual punishment upon Jefferson in violation of the Fourteenth Amendment to the United States Constitution. All defendants acted with deliberate indifference.

68.    All defendants acted with intent to violate Jefferson's constitutional

13

rights or with reckless disregard for those rights, justifying punitive damages against the individual defendants and ACH.

69.     As a result of the conduct of defendants, Jefferson suffered physical and emotional injuries and then died.

## Count I - 42 U.S.C. § 1983 -
## Deliberate Indifference to Serious Medical Needs

70.     The individual defendants except Dorning and Morrison, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Jefferson's serious medical needs as described above. These defendants, despite knowledge of a serious medical need, took no action or clearly inadequate action and did thereby deprive Jefferson of her rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

71.     Defendants Dorning, Morrison, Johnson, and Williams are supervisory officials for the jail and were responsible for development and implementation of policies and procedures for medical care at the jail and by action and inaction established the unconstitutional customs and policies described above.   These defendants did thereby deprive Jefferson of her rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

14

72.     Defendant Madison County intentionally refused to adequately fund medical care as described above with deliberate indifference to the serious medical needs of inmates such as Jefferson,  had a policy of not adequately funding inmate medical care, and did thereby contribute to cause Jefferson's injuries and the individual defendants' denial of necessary medical treatment for Jefferson's serious medical need.

73.     Defendants Madison County and Dorning are also liable for the acts of ACH and its policymakers, including Johnson and Williams, as Madison County and Dorning delegated their final policymaking authority to them.

74.     As a result of the conduct of defendants, Jefferson was caused to suffer physical and emotional injuries and damages and died.

### Count II - Negligence / Wantonness

75.     The individual ACH defendants and unknown ACH employees involved with Jefferson's care owed a duty to Jefferson to meet the standard of care applicable to inmates and/or to make sure those under their supervision were trained adequately regarding the proper care of such inmates and that adequate policies and procedures regarding the proper care of such inmates were in place.  This standard of care required, among other things, proper treatment of Jefferson's constipation, narcotic pain medication to ease Jefferson's suffering, appropriate monitoring of Jefferson's

deteriorating condition, testing to determine if Jefferson's bowel was obstructed, and referral of Jefferson for evaluation and treatment outside of the jail.  These defendants negligently and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that Jefferson suffered unnecessary pain and suffering and died.

76.     Because ACH personnel were acting within the scope of their employment, defendant ACH is liable for their negligence and/or wantonness.

## Other Matters

77.     All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

78.     As relief, plaintiff seeks the following:

   a.     That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   b.     That plaintiff  be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence plaintiff  is entitled to recover;

   c.     That plaintiff  be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

   d.     That plaintiff  be awarded the costs of this action, his reasonable attorney's fees, and his reasonable expert witness fees;

   e.     That plaintiff  be awarded appropriate declaratory and injunctive relief; and

      f.      That plaintiff  be awarded such other and further relief to which plaintiff  is justly entitled.

Respectfully submitted,


s/ Henry F. Sherrod III
Henry F. Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street (35630)
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Jerry D. Roberson (ASB-8283-O71J)
P.O. Box 657
Haleyville, Alabama 35565
Phone: 205-485-1020
Fax: 205-485-2660
Email: jerry@jdrlaw.org

Attorneys for Plaintiff

## Jury Demand

Plaintiff requests a trial by jury.

s/ Henry F. Sherrod III
Henry F. Sherrod III