

FILED
2015 Aug-28  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CAROLYN JEFFERSON, as the** | ) | |
| **personal representative of the** | ) | |
| **Estate of TANISHA** | ) | |
| **JEFFERSON** | ) | |
| | ) | **Civil Action Number** |
| **Plaintiff**, | ) | **5:14-cv-01959-AKK** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MADISON COUNTY,** | ) | |
| **ALABAMA, et al.,** | ) | |
| | ) | |
| **Defendant**. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carolyn Jefferson ("the plaintiff") brings this claim as the personal

representative of the estate of Tanisha Jefferson ("Jefferson") against Madison

County, Alabama ("the County"), Madison County Sheriff Blake Dorning,

Madison County Jail Administrator Steve Morrison, Advanced Correctional

Healthcare, Inc. ("ACH"), ACH CEO Norman R. Johnson, ACH physician Arthur

M. Williams, and five additional ACH employees. Doc. 8. The plaintiff contends

that the defendants were deliberately indifferent to inmate Jefferson's healthcare

needs, resulting in her death, and are consequently liable to the plaintiff pursuant to 42 U.S.C. § 1983. *Id*. at 26–27. The plaintiff also brings state law claims for negligence and wantonness against the individual ACH employees. *Id*. at 27.

The County, Sheriff Dorning, and Administrator Morrison move to dismiss the § 1983 claims against them on the grounds that the amended complaint fails to state a claim upon which relief can be granted. Doc. 17 at 1; doc. 19 at 1. Sheriff Dorning and Administrator Morrison also contend that they are entitled to qualified immunity. Doc. 19 at 5. Dr. Williams moves to dismiss the state law negligence and wantonness claim against him on the grounds that it is not properly pleaded pursuant to Ala. Code § 6-5-551. Doc. 22 at 1. The motions are fully briefed and ripe for review. *See* docs. 18, 20, 22, 27, 28, 29, 31, and 33. For the reasons explained below, except as to the portion of the § 1983 claim against Sheriff Dorning based on a delegation theory, which requires further briefing, the County, Sheriff Dorning, Administrator Morrison, and Dr. Williams' motions are **DENIED**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND[1]

On May 1, 2012,[2] the County, Sheriff Dorning, and ACH entered into a contract ("the ACH Agreement) pursuant to which ACH agreed to provide healthcare services at the Madison County Jail. Doc. 8-1 at 1. Relevant here, the ACH Agreement limited ACH's liability for medical care provided to inmates outside the jail to $200,000 per quarter. Doc. 8 at 17; doc. 8-1 at 16. If any outside medical care costs exceeded $200,000, the county agreed to reimburse ACH for the excess amount. Doc. 8 at 17, doc. 8-1 at 16. Critically, if ACH spent less than

---

[1] In ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "[a]ll facts set forth in a plaintiff's complaint are to be accepted as true." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (citing *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). Here, however, the court notes that as the plaintiff's amended complaint contains twenty-one pages of alleged facts, doc. 8 at 4–25, the court will limit itself to summarizing the underlying facts that form the basis of the plaintiff's claims. Other facts will be addressed, as necessary, in the context of discussing the various defendants' motions to dismiss.

[2] The ACH Agreement attached to the plaintiff's amended complaint, doc. 8-1, expired on April 30, 2013. Doc. 8-1 at 1. However, on May 17, 2013, ACH, the County, and Sheriff Dorning signed an amendment, pursuant to which they continued the ACH Agreement on a month-to-month basis indefinitely, doc. 33-1 at 1, and consequently the parties do not appear to dispute that it was in effect during the time frame when the events giving rise to this lawsuit occurred, *see* doc. 33 at 2 n. 1. The court may consider the ACH Agreement and the amendment as part of the pleadings without converting the defendants' motions into motions for summary judgment because they are referred to in the amended complaint and are "central to the plaintiff's claim." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Moreover, although the contract the plaintiff attached to the amended complaint dates from 2012, ACH has provided healthcare at the Madison County Jail since 2010 at the latest. Doc. 8 at 17.

$200,000 per quarter on outside medical costs, it kept the difference between its actual costs and the $200,000 cap as profit. Doc. 8 at 18.

Jefferson was arrested and booked into the Madison County Jail on October 14, 2013. Doc. 8 at 4. Throughout Jefferson's incarceration, she repeatedly complained that she suffered from stomach pain and was unable to have a bowel movement. *Id*. Beginning on October 19, 2013, she began to complain that she suffered from rectal and abdominal pain. *Id*. at 5. She filed at least one medical grievance, including one on October 25, 2013 in which she complained that she had been sick for ten to eleven days. *Id*. She also made numerous requests to see Dr. Williams, and mentioned in one that she feared for her life. *Id*. By October 29, 2013, Jefferson had not had a bowel movement in at least thirteen days, and told fellow inmates and jail staff, including corrections officers and the individual ACH defendants, that her abdominal pain was so severe she thought she would explode, and that she could barely walk. *Id*. at 6.

Jefferson first saw Dr. Williams on October 29, 2013. *Id*. at 5. After examining Jefferson, Dr. Williams prescribed laxatives, which proved insufficient for Jefferson's condition, and sent Jefferson back to her cell. *Id*. By this day, at the latest, it was clear to all of the individual defendants, except for Sheriff Dorning and Administrator Morrison, that Jefferson needed outside medical treatment. *Id*.

at 6.

Jefferson's condition continued to decline. *Id*. Although jail staff informed ACH personnel, including Dr. Williams, of Jefferson's condition, they did nothing. *Id*. Jefferson reported her deteriorating condition to an ACH nurse in the early hours of October 31, 2013, but the nurse sent Jefferson back to her cell. *Id*. By the morning, Jefferson was disoriented. Although Dr. Williams and other ACH employees received notice of this development, as well as of her early morning visit to the nurse, they still did not refer Jefferson to outside medical care. *Id*. At approximately 8:40 p.m. Jefferson passed out in her cell, complaining of extreme abdominal pain. *Id.* Jail and ACH personnel took her to the medical department for observation, and did not call an ambulance until Jefferson became non-responsive at approximately 9:09 p.m. *Id*. at 6–7. By then, it was too late, as Jefferson had died from complications related to a bowel obstruction. *Id*. at 4.

The plaintiff contends that Jefferson died as a result of the defendants' failure to refer her to a hospital for evaluation and treatment. *Id.* The plaintiff points out that five additional Madison County jail inmates died between August 2010 and August 2013 as a result of ACH employees' failure to refer them to outside medical care providers. *Id*. at 10–14. Relevant to the motions currently pending before the court, the plaintiff contends that the County, Sheriff Dorning,

Administrator Morrison, and Dr. Williams implemented policies and established

customs that resulted in the inadequate funding of healthcare at the County jail.

Doc. 8 at 26. She contends that these defendants undertook these actions with

deliberate indifference to the serious medical needs of inmates, such as Jefferson,

a violation of the Fourteenth Amendment, and that the policies and customs at

issue contributed to Jefferson's death, giving rise to claims against them[3] under

§ 1983 based on municipal and supervisory theories of liability. *Id*. Additionally,

she claims Sheriff Dorning is liable for ACH's acts because he delegated his final

policymaking authority to ACH. *Id*. at 26–27. She also claims that, aside from her

§ 1983 claim against Dr. Williams based on supervisory liability, he is also

directly liable under § 1983 and Alabama common law for his failure to provide

Jefferson with adequate treatment. *Id*. at 25–27.

## III. ANALYSIS

Pending before the court are the County, Sheriff Dorning, Administrator

Morrison, and Dr. Williams' motions to dismiss. Docs. 17, 19, and 22. The court

will first address the County and Sheriff Dorning and Administrator Morrison's

motions, which rely on overlapping arguments, before turning to Dr. Williams'

---

[3] The plaintiff also pursues a claim against Dr. Williams under § 1983 based on his alleged direct role in Jefferson's death. Doc. 8 at 25–26. Dr. Williams does not move to dismiss either of the § 1983 claims against him.

motion.

## A. The County's motion to dismiss

Under Alabama law, "[t]he duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.'" *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998) (quoting *Stark v. Madison Cnty.*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996)). Consequently, the only question before the court is whether the plaintiff has sufficiently pleaded a claim that the County failed to adequately fund its jail. In addressing this question, the court notes that it is well established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Relevant here, the County contends that the plaintiff cannot show it has a

custom or policy of deliberate indifference, given that the ACH Agreement

obligated the County to refund ACH for any amount in excess of the $200,000 cap

that ACH spent on outside medical care per quarter. Doc. 18 at 13–17. In other

words, the County contends that because there was no cap on *its* liability for

outside medical care (as opposed to that of ACH), it did not underfund the jail.

The County's position, at best, oversimplifies the plaintiff's claim. The plaintiff

does not merely argue that the County underfunded its jail. Instead, the plaintiff

contends that by entering into an agreement with ACH that allowed ACH to keep

whatever portion of the $200,000 ACH failed to spend on outside healthcare each

quarter, the County (and Sheriff Dorning, who was also a party to the contract)

incentivized ACH to spend as little as possible on outside healthcare, resulting in

the underfunding of inmate healthcare and the denial of necessary healthcare to

inmates.[4] *See* doc. 8 at 17–18 ("[T]he $200,000 per quarter number was designed

---

[4] To the extent that the County acknowledges and counters this argument by contending that the ACH Agreement required ACH to "'deliver unimpeded, necessary healthcare services . . . to inmates,'" doc. 18 at 13 (quoting doc. 8-1 at 16), and to "'identify the need for inmate care to be rendered outside the Detention Facility and schedule, coordinate, and pay for all non-emergency, emergency, and specialized healthcare rendered to inmates inside and outside the Detention Facility," *id.* at 14 (quoting doc. 8-1 at 4), i.e. that the terms of the ACH Agreement prohibit ACH from limiting inmates' access to outside healthcare in the manner alleged by the plaintiff, "[i]n deciding a motion to dismiss under Fed. R. Civ. P. 12(b), a court must consider the legal sufficiency of the complaint, not the weight of evidence which might be offered at trial," *Sawinski v. Bill Currie Ford, Inc.*, 866 F. Supp. 1383, 1385 (M.D. Fla. 1994)). Moreover, establishing the terms of the ACH agreement is not synonymous with establishing that ACH adhered to them—indeed, the plaintiff explicitly contends ACH did not. *See* doc. 29 at 5 ("Contracts are just promises and [the] plaintiff's complaint alleges broken promises regarding

to give ACH a financial incentive to control outside medical costs, which in turn has led ACH to delay and deny referrals to outside providers."). As this circuit has noted, "if necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out." *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985) (citing *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984)).[5] Because the plaintiff contends that the County's funding structure incentivized ACH employees financially to abstain from referring inmates to outside medical care, the plaintiff has sufficiently alleged that the County had a policy that was deliberately indifferent to Jefferson's serious medical

_____

medical care at the jail that caused much unnecessary suffering and at least [six] unnecessary deaths.").

[5] The plaintiff directs the court to nonbinding authority in which she contends courts have found similar incentive schemes to be the basis of § 1983 claims. Doc. 29 at 7–8 (citing *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484 (1st Cir. 2011); *Kenney v. Montgomery Cnty.*, Civil Action No. 13-2590, 2013 WL 5356862 (E.D. Pa. Sept. 25, 2013); *D'Agostino v. Montgomery Cnty.*, Civil Action No. 11-7728, 2012 WL 425071 (E.D. Pa. Feb. 9, 2012); *Shultz v. Allegheny Cnty.*, 835 F. Supp. 2d 14 (W.D. Pa. 2011); *Gioffre v. Cnty. of Bucks*, Civil Action No. 08-4232, 2009 WL 3617742 (E.D. Pa. Nov. 2, 2009); *Bowman v. Corr. Corp. of Am.*, 188 F. Supp. 2d 870 (M.D. Tenn. 2000), *rev'd on other grounds*, 350 F.3d 337 (6th Cir. 2003)). Because delaying an inmate's access to healthcare to save costs or increase profits is a sufficient basis for a deliberate indifference claim in this circuit, *see Ancata*, 769 F.2d at 704, the court declines to discuss these cases at length. It will, however, make an observation about the County's (and Sheriff Dorning and Administrator Morrison's) contentions regarding one of them. Cherry-picking language from *Bowman*, the County, Sheriff Dorning, and Administrator Morrison contend that it "made pellucid that its 'conclusion should not be construed as barring a managed health care system with physician incentives in a prison setting.'" Doc. 31 at 8 (quoting *Bowman*, 188 F. Supp. 2d at 890); doc. 33 at 7 (same). To the extent that *Bowman* is relevant to this case, in relying upon the quoted language, the County, Sheriff Dorning, and Administrator Morrison ignore its lengthy and approving discussion of medical literature cautioning against the use of incentive programs that encourage physicians to reduce or limit patient services. 188 F. Supp. 2d at 887–89.

needs and caused a violation of Jefferson's constitutional rights.

The court's inquiry, however, does not end here. "Liability based on a custom or policy can result from either a facially unconstitutional custom or policy or from a facially constitutional custom or policy that is implemented in an unconstitutional manner." *Thomas v. McNeil*, No. 3:04-cv-917-J-32JRK, 2009 WL 64616, at *21 (M.D. Fla. Jan. 9, 2009) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007)). "To show deliberate indifference based on the latter, the violations must be flagrant, widespread and continuous such that the defendant has actual or constructive knowledge of the pattern." *Id*. (citing *Goebert*, 510 F.3d at 1332). "Thus, a policy that can be humanely and properly applied—one that is facially constitutional—cannot lead to liability based on a single incident of deprivation." *Id*. (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036–37 (11th Cir. 2001)); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (stating that a policy is facially unconstitutional only if "no set of circumstances exists under which [it] would be valid"). "Rather, liability will only attach where, notwithstanding the otherwise facially constitutional policy, a pattern of unconstitutional conduct is so obvious as to put the official on notice that the implementation of the policy results in constitutional violations." *Thomas*, 2009 WL 64616, at *21 (citing *Marsh*, 268 F.3d at 1036–37; *Rivas v. Freeman*, 940

F.2d 1491, 1495 (11th Cir. 1991)).

Because the contracting parties theoretically could adhere to the ACH Agreement without inflicting constitutional injury, to succeed on her claim, the plaintiff must allege a pattern of violations sufficient to place the County on notice that the actual implementation of the ACH Agreement was resulting in constitutional violations. To meet this burden, the plaintiff cites the deaths of inmates Julie Jean, Emanuel Patterson, Frederick Foster, Nikki Listau, and Deundrez Woods, which she contends occurred between August 2010 and August 2013 because of ACH's failure to seek necessary outside medical treatment on the decedents' behalf.[6] *See* doc. 8 at 10–11; *id*. at 13–14; doc. 29 at 10. The plaintiff relies also on "prisoner complaints" and "communications from correctional officers," regarding the subpar medical care ACH provided. Doc. 8 at 9. The court finds this alleged conduct was sufficient to put the County on notice of a pattern of constitutional violations and the plaintiff has alleged a sufficient pattern to survive a motion to dismiss. *See Harper v. Lawrence Cnty., Ala*., 592 F.3d 1227, 1236–37 (11th Cir. 2010) (plaintiff's complaint, which alleged that her decedent died after

---

[6] Jean died in August 2010 from lithium toxicity. Doc. 8 at 13–14. Patterson died in December 2011, also from lithium toxicity. *Id*. at 14. Foster died in May 2012 from unknown causes. *Id*. Listau died in March 2013 from one or more falls caused by delirium tremens-related seizures. *Id*. at 10. Woods died in August 2013 from a blood clot that originated in his gangrenous foot. *Id*. at 10–11.

receiving no medical attention for alcohol withdrawal while incarcerated in the

county jail and described a similar incident that occurred one month prior, alleged

a pattern of constitutional violations sufficient to state a claim under § 1983);

*Danley v. Allen*, 540 F.3d 1298, 1315 (11th Cir. 2008), *overruled on other*

*grounds by Iqbal*, 556 U.S. 662 (internal quotation marks omitted) (plaintiff's

complaint, which alleged that the defendant "had knowledge through force reports

and similar documents, inmate complaints, jailer complaints, attorney complaints,

judicial officer complaints, and personal observation that jailers at the Lauderdale

Detention Center regularly used pepper spray excessively as a means of

punishment and not for legitimate reasons," alleged a sufficient pattern of

constitutional violations).

Perhaps recognizing that *Harper* and *Danley* require that the court deny its

motion, the County attempts to distinguish these two cases. As to *Harper*, the

County contends that "the argument apparently was not made that a single prior

incident cannot evidence a custom or policy." Doc. 31 at 11–12. This contention is

unavailing because, even if the County is correct that the *Harper* defendants failed

to argue that one prior incident was insufficient to evidence a custom or policy,

that does nothing to undermine the *Harper* court's explicit (and binding)

conclusion that one prior incident was, in fact, sufficient to establish a custom or

policy. *See* 592 F.3d at 1236–37. More generally, the doctrine of stare decisis would quickly crumble if courts allowed parties to distinguish precedent that undermines their positions by simply contending that prior litigants failed to make certain arguments.

As to *Danley*, the County similarly contends that "[t]here was no discussion or analysis (and apparently no argument) in that case as to how many previous incidents were sufficient, and the [c]ourt entered no holding on that point." Doc. 31 at 11. This contention also misses the mark because, even were the court to conclude that the *Danley* court's statement that allegations of an unspecified number of force reports and complaints from inmates, jailers, attorneys, and judicial officers were sufficient to allege a custom or policy is merely dicta, it nonetheless may be guided by it here, where the plaintiff's complaint alleges the existence of an unspecified number of similar complaints in addition to five other inmate deaths. The court is likewise not convinced by the County's attempt to distinguish *Danley* as a pre-*Iqbal* case, *see id*, in part, because the County fails to provide any authority supporting its implication that the *Danley* plaintiff's claim would fail under *Iqbal*'s pleading standard. Moreover, *Danley* was evaluated pursuant to the Eleventh Circuit's pre-*Iqbal* heightened § 1983 pleading standard, which rejected complaints whose allegations were "'vague and conclusory.'"

*Danley*, 540 F.3d at 1314 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003)). In determining that *Iqbal* overruled *Danley*, the Eleventh Circuit observed that:

> while the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards in general, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held . . . that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss. The Court did not apply a heightened pleading standard.
>     While . . . *Danley* reaffirm[s] application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree with [the plaintiff] that those cases were effectively overturned by the *Iqbal* court.

*Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). In other words, the *Randall* court described the Eleventh Circuit's pre-*Iqbal* heightened § 1983 pleading standard as *more stringent* than the pleading standard *Iqbal* ushered into effect. Consequently, the fact that *Danley* predates *Iqbal* is not grounds for disregarding it.

Next, the County contends that the five additional deaths cited by the plaintiff are numerically insufficient to establish a policy or custom. Doc. 18 at 17–19. In support of its position, the County cites to a number of cases in which courts found certain numbers of incidents insufficient to state a policy or custom

claim under § 1983.[7] None of them, however, are binding on this court.

Additionally, the only Eleventh Circuit decision[8] the County cites, *Whittier v. City of Sunrise*, in which the court concluded that three prior incidents in which police failed to knock and announce were insufficient to establish a custom or policy, 395 F. App'x 648, 650 (11th Cir. 2010), does not present a compelling reason to deviate from *Harper*, because *Whittier* did not also involve complaints from prisoners and communications from law enforcement officers. Here, in addition to the six deaths—two more than the four total incidents in *Whittier*, the County also had inmate complaints and communications from corrections officers about the inadequate healthcare that also put the County on notice. More fundamentally, the constitutional injury at issue in *Whittier*, failing to knock and announce, is qualitatively different than death due to inadequate medical care. In any event, as *Harper* makes clear, a plaintiff's death and one additional similar incident are sufficient to establish a policy or custom. *See Harper*, 592 F.3d at 1236–37.

_____

[7] The court notes that only one of these cases found that more than six incidents, the total number of deaths alleged here, failed to establish a policy or custom. *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding eleven incidents of warrantless entry did not establish a custom). Of course this observation momentarily sets aside the plaintiff's additional allegations of inmate complaints and communications from corrections officers. Moreover, as the court will discuss in greater detail when distinguishing the knock and announce violations in *Whittier*, warrantless entry is qualitatively different from deliberate indifference to a serious medical need resulting in death.

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

The County also contends that inmate Woods and Listau's deaths "cannot be considered because they are actually the subject of other contested lawsuits filed by [the] plaintiff's counsel. In other words, the allegations related to the circumstances of those deaths are at this point just that: allegations." Doc. 18 at 18. The County is correct that the plaintiff only has allegations. Still, all the plaintiff must do at this stage of the proceedings is present the court with "[f]actual *allegations* [that are] enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555 (emphasis added). Therefore, although the court agrees with the County's general position that the existence of a lawsuit does not guarantee the veracity of the factual allegations in a plaintiff's complaint, it rejects the County's contention that "courts have specifically rejected reliance on mere allegations of other lawsuits in order to *plead* a custom or policy." Doc. 18 at 18–19 (emphasis added) (citing *Brooks v. Sheib*, 813 F.2d 1191, 1193 (11th Cir. 1987); *Jones v. City of N.Y.*, No. 12-cv-3658, 2013 WL 6047567, at *13 (E.D.N.Y. Nov. 14, 2013); *Gray v. City of Hammond, Ind.*, 693 F. Supp. 2d 823, 833 (N.D. Ind. 2010); *Steibel v. Locke*, No. 4:07CW2089SNLJ, 2009 WL 1456705, at *20 (E.D. Mo. May 22, 2009)). All of the opinions the County cites involve motions for summary judgment or motions to set aside a jury verdict, which require courts to evaluate the sufficiency of evidence. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added) (summary

judgment is improper if the court determines "*the evidence* is such that a

reasonable jury could return a verdict for the nonmoving party"); *Brooks*, 813 F.2d

at 1193 (emphasis added) (setting aside a jury verdict because "there is no

*evidence* that city officials were aware of past police misconduct"). That is simply

not the court's task here, where it need only determine whether the "plaintiff has

stated a claim that, if true, would entitle [her] to relief." *Bell Atl. Corp.*, 550 U.S.

at 578. For similar reasons, the County's argument that even if the five additional

deaths cited by the plaintiff are sufficient to plead the existence of a policy or

custom, "the complaint gives no clue as to where the information related to these

deaths originated and thus give the reader no opportunity to vet its legitimacy,"

doc. 18 at 20, is, at best, premature.

The County's remaining arguments are similarly unavailing. The County,

relying on *MacMillan v. Roddenberry*, contends that the manner of the six deaths

are not sufficiently similar to establish a policy or custom. Doc. 18 at 20.

However, in *MacMillan*, at the summary judgment stage and after the benefit of

discovery, the court found that two prior, unsubstantiated, alleged incidents, one

involving an "inmate's unknown medication for an unknown ailment [being]

reduced under unknown circumstances," and the other involving an inmate's

complaint that the jail's medical staff failed to take his complaints of pain seriously were insufficiently similar[9] to the *MacMillan* plaintiff's contention that jail staff failed to adequately treat a tendon tear he sustained during his arrest.[10] 432 F. App'x 890, 893, 897. Again, the inquiry here is at the pleading stage and does not require the court to delve into whether the plaintiff has sufficient evidence to prove her case. Rather, the court is tasked solely with ascertaining whether the plaintiff has alleged sufficient facts upon which relief can be granted. In that respect, the plaintiff alleges that jail and ACH employees watched Jefferson and five other inmates deteriorate over the course of days, resulting in their deaths.[11] These allegations are sufficiently similar to allege a policy or custom and, at any rate, are more similar, in that all of the inmates died, than the scattershot allegations in *MacMillan*. The County's attempts to distinguish the deaths based on their different causes is merely hair-splitting at this juncture.

Finally, the County seems to contend that the Eleventh Circuit's decision in

---

[9] The court also found that neither of these incidents constituted deliberate indifference. *MacMillan*, 432 F. App'x at 897.

[10] It is not entirely clear what injury the *MacMillan* plaintiff contended gave rise to his deliberate indifference claim. His use of force claim was the primary focus of his case on appeal and because the court determined that he had waived his deliberate indifference claim, it only examined it in passing. *MacMillan*, 432 F. App'x at 896–97.

[11] The court finds it sufficient to say that this statement also refutes the County's contention that the plaintiff "does not even claim that ACH, correctional officers, the County, or anyone else was actually responsible for these deaths." Doc. 18 at 22.

*McDowell v. Brown* compels the dismissal of the plaintiff's claims against the County. Doc. 18 at 16. In particular, the County points to language from *McDowell* noting that "'[t]o prevent municipal liability for a . . . decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged,'" and that to establish a custom or policy, an "alleged constitutional violation [must be] a 'highly predictable consequence'" of a municipalities' budgetary decision. *McDowell*, 293 F.3d at 1292 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409–10 (1997)). The court disagrees with this restrictive reading of *McDowell*, a case in which the plaintiff contended that the defendant County's underfunding of its jail caused jail staff to fail to transport him to a local hospital in a timely fashion. *Id*. at 1289–90. While the Eleventh Circuit did make the remarks cited by the County regarding predictability, the crux of its decision hinged on the plaintiff's failure to produce evidence that jail staff failed to transport other inmates to the hospital in a timely fashion. *See id*. at 1291 ("Simply put, this isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy of understaffing the Jail so as to delay the transfer of inmates to [the hospital.]"). There is no such failure here because, as the court explained above, the plaintiff has adequately pleaded that the

County created a policy that resulted in the inadequate funding of inmate healthcare via the incentive provision of the ACH agreement. Moreover, in *McDowell*, the court found that it was not highly predictable that a "failure to properly fund the resources necessary to staff the Jail" would result in jail staff failing to transport inmates to the hospital in a timely fashion. *Id*. In other words, a specific result was not the predictable outcome of a general decision. There is a much stronger link between the alleged cause and effect in the present matter. Simply put, it is highly predictable that if a contract increases an entity's profits if it cuts costs, the entity will cut costs. Consequently, *McDowell* does not provide a compelling reason to dismiss the plaintiff's claims against the County.

In sum, the plaintiff has successfully pleaded a § 1983 claim for deliberate indifference to a serious medical need against the County. Consequently, the County's motion to dismiss is **DENIED**.

### B. Sheriff Dorning and Administrator Morrison's motion to dismiss

The plaintiff claims that Sheriff Dorning and Administrator Morrison were responsible for the development and implementation of policies and customs that resulted in ACH employees failing to refer inmates to outside healthcare providers and are consequently liable to the plaintiff based on a supervisory theory of liability. Doc. 8 at 26. The plaintiff also claims Sheriff Dorning is liable under §

1983 for the acts of ACH and its policy makers because he delegated his final

policymaking authority to ACH.  *Id*. at 26–27. The court addresses these

contentions separately below.

### 1. The plaintiff's supervisory liability claim against Sheriff Dorning and Administrator Morrison

As with municipalities, "'[i]t is well established in this Circuit that

supervisory officials are not liable under § 1983 for the unconstitutional acts of

their subordinates on the basis of respondeat superior or vicarious liability.'" *West*

*v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007) (quoting *Cottone v. Jenne*, 326

F.3d 1352, 1360, 11th Cir. 2003)). Instead, supervisory officials "are liable only if

they personally participated in the allegedly unconstitutional conduct or if there is

'a causal connection between their actions and the alleged constitutional

deprivation.'"[12] *Id*. (quoting *Cottone*, 326 F.3d at 1360). When, as here, the

---

[12] A failure-to-train claim is a subset of a § 1983 supervisory liability claim and has similar requirements:

> If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortuous conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.

*Brown*, 520 U.S. at 407 (citing *Cannon*, 489 U.S. at 1209 (O'Connor, J. concurring and dissenting in part) ("[Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations . . . .")). Sheriff Dorning and Administrator Morrison claim that the court should dismiss the plaintiff's

plaintiff does not allege that the supervisory officials were personally involved in

the alleged misconduct, to survive a motion to dismiss under Rule 12(b)(6), a

plaintiff must establish the requisite causal connection by pleading either:

> (1) a "custom or policy that results in deliberate indifference to constitutional rights or facts that support an inference that the supervisors directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so;" or (2) "a history of widespread abuse that put the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so."

*Id*. at 1328–29 (quoting *Cottone*, 326 F.3d at 1360). This is virtually identical to

the standard used to assess municipal liability. Moreover, because the arguments

advanced by Sheriff Dorning and Administrator Morrison are almost exactly the

---

failure-to-train claim because she has not alleged a pattern of similar constitutional violations to put them on notice of a defective training program and because "it is unclear how [the] plaintiff believes the correction officers should have been trained." Doc. 33 at 12 n. 9. To the extent the plaintiff's amended complaint states a failure-to-train claim (Count I does not use failure-to-train language, but merely states that Sheriff Dorning and Administrator Morrison "are supervisory officials for the jail and were responsible for development and implementation of policies and procedures for medical care at the jail," doc. 8 at 26), the court declines to dismiss it on the grounds proffered by Sheriff Dorning and Administrator Morrison. As the court explained when addressing the County's motion, the plaintiff has alleged a sufficient pattern of constitutional violation to proceed, and Sheriff Dorning and Administrator Morrison's contentions that the plaintiff fails to point to defects in the jail's training program ignore language in the amendment complaint stating precisely that. *See* doc. 8 at 12 ("Correctional officers deferred to ACH personnel because they were trained to do so. Correctional officers did not defer to ACH in ignorance, however. ACH had been the contractor at the Madison County Jail since before 2010. It was well known to Madison County correctional officers that ACH had a practice of delaying or denying referrals of inmates for outside medical care. Correctional officers were aware that ACH was making medical care decisions regarding inmates that put cost control over inmate health and safety."). As to Sheriff Dorning and Administrator Morrison's passing argument that they are entitled to qualified immunity from the plaintiff's failure-to-train claim, they are not for the same reasons as the general supervisory liability claim.

same as those advanced by the County, it is sufficient to say that the court rejects

Sheriff Dorning and Administrator Morrison's contentions that they were unaware

of a widespread series of violations similar to that alleged by the plaintiff for the

same reason it rejected the same contentions advanced by the County.[13]

Sheriff Dorning and Administrator Morrison contend that even if the

plaintiff has adequately pleaded a claim against them, they are at least entitled to

qualified immunity. Doc. 20 at 27. At this stage in the proceedings, "[q]ualified

immunity shields federal and state officials from money damages unless a plaintiff

*pleads* facts showing (1) that the official violated a statutory or constitutional

right, and (2) that the right was 'clearly established' at the time of the challenged

conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (emphasis added)

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the court previously

---

[13] Sheriff Dorning and Administrator Morrison do raise two arguments that the County did not rely on, both of which the court can easily discard. First, Sheriff Dorning and Administrator Morrison contend that the plaintiff's claims are conclusory. Doc. 20 at 7, 10. However, far from simply containing boilerplate language, the complaint alleges that Sheriff Dorning was a party to and both Sheriff Dorning and Administrator Morrison implemented the ACH Agreement, which incentivized ACH to avoid referring inmates to receive outside medical care. This is the precise kind of "plain statement of the claim" contemplated by Rule 8(a)(2). Second, Sheriff Dorning and Administrator Morrison contend that the ACH Agreement is similar to an agreement discussed by the Eleventh Circuit in *William v. Limestone County, Alabama*, in which the court found, among other things, that a sheriff was not deliberately indifferent to inmates' serious medical needs. Doc. 20 at 14–15 (citing 198 F. App'x 893, 897 (11th Cir. 2006)). This argument is a nonstarter because the agreement discussed in *Williams* does not appear to contain anything similar to the incentive provisions that are central to the present matter.

explained when addressing the County's motion, in this circuit, delaying an

inmate's access to healthcare to save costs or increase profits is deliberate

indifference in violation of the Fourteenth Amendment. *See Ancata*, 769 F.2d at

704. There are two ways in which a plaintiff can allege the requisite causal action

between a supervisor's actions and a constitutional deprivation to give rise to the

supervisory liability the plaintiff seeks to impose on Sheriff Dorning and

Administrator Morrison. The first requires the plaintiff to adequately plead "'facts

that support an inference that the supervisors directed the subordinates to act

unlawfully or knew that the subordinates would act unlawfully and failed to stop

them from doing so.'" *See West*, 496 F.3d at 1328 (quoting *Cottone*, 326 F.3d at

1360). The plaintiff has done so here by contending that "[Sherrif] Dorning,

[Administrator] Morrison, and the correctional officers they supervised . . . were

well aware that ACH provided substandard and frequently inhumane medical

care," doc. 8 at 19, that "[Sheriff] Dorning and Madison County were aware of

ACH's business model, were aware ACH put cost control over inmate health and

safety, yet retained ACH as the contractor . . . because it saved the county money,"

*id*. at 20, and that "[i]n order to control costs, defendant ACH, with the knowledge

and consent of defendants Dorning and Morrison, staffed the Madison County Jail

inadequately, hired sub-standard medical personnel willing to put costs over

inmate health and safety, denied inmates medications, and delayed or denied medically-necessary referrals to outside providers," *id*. at 21. The second method calls for the plaintiff to sufficiently plead "'a history of widespread abuse that put the responsible supervisor[s] on notice of the need to correct the alleged deprivation . . . .'" *West*, 496 F.3d at 1328 (quoting *Cottone*, 326 F.3d at 1360). As the court explained when assessing the county's motion, the plaintiff has satisfied this standard through her allegations regarding the five previous inmate deaths as well as prisoner complaints and communications from correctional officers about the quality of ACH's services. Consequently, the plaintiff has adequately pleaded that Sheriff Dorning and Administrator Morrison violated Jefferson's constitutional rights.

Next, with respect to the second prong of the qualified immunity analysis, "[t]o determine whether a right is clearly established, the courts look to the precedent of the Supreme Court of the United States, the Eleventh Circuit's precedent, and the pertinent state's supreme court precedent (here Alabama), interpreting and applying the law in similar circumstances." *Zann v. Whidby*, 904 F. Supp. 2d 1229, 1244 (N.D. Ala. 2012) (citing *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007)). "The law clearly establishing the violation also must be 'pre-existing'—that is, in effect at the time of the alleged violation. This

requirement ensures that officers will not be liable for damages unless they had 'fair warning' that their conduct violated the law." *McClish*, 483 F.3d at 1237 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). No room for debate exists here because the Eleventh Circuit determined that delaying an inmate's access to healthcare to save costs or increase profits is deliberate indifference to a serious medical need in 1985, more than two decades before the events giving rise to this case transpired. *See Ancata*, 769 F.2d at 704. Consequently, Jefferson's rights were clearly established at the time Sheriff Dorning and Administrator Morrison allegedly violated them.

In sum, because the plaintiff's allegations are sufficient to plead that Sheriff Dorning and Administrator Morrison violated Jefferson's clearly established constitutional rights, Sheriff Dorning and Administrator Morrison are not entitled to qualified immunity at this time.

## 2. The plaintiff's delegation claim against Sheriff Dorning

The plaintiff contends that Sheriff Dorning "is . . . liable for the acts of ACH and its policymakers . . . [because] Dorning delegated his final policymaking authority to ACH." Doc. 8 at 26–27. This theory of liability is derived from the Supreme Court's decision in *Pembaur v. City of Cincinnati*. Under that theory, as it has evolved in this circuit, "[i]n order for the actions of a government official to

be deemed representative of [a] municipality, the acting official must be imbued with final policymaking authority." *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). This circuit's precedent "'preclude[s] § 1983 liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion.'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1264 (11th Cir. 2010) (quoting *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)). "In other words 'final policymaking authority over a particular subject matter does not vest in an official whose decisions are 'subject to meaningful administrative review.'" *Id.* (quoting *Scala*, 116 F.3d at 1401).

The plaintiff's theory here is that by the terms of the ACH Agreement, Sheriff Dorning failed to retain the power to review[14] ACH employees' decisions to delay or fail to refer inmates to receive outside medical care. In response, Sheriff Dorning points to the ACH Agreement's provisions that obligate ACH to

---

[14] Both the parties' briefs and this circuit's case law contain some ambiguity regarding whether it is sufficient for a final policymaker to retain the power to review or if the policymaker must actually engage in review. There is a significant difference between the two positions, but resolving it is not necessary to deciding the merits of the defendants motions.

"operate the healthcare program in a cost-effective manner[15] with full reporting

and accountability to the Sheriff and to Madison County," doc. 8-1 at 18, and to

"provide monthly statistical utilization reports of services provided, including all

off-site services provided sorted by provider and inmate," *id*. at 10. The problem

with Sheriff Dorning's position is that he does not cite, and the court cannot find,

any provision in the ACH Agreement providing for specific review of the

decisions at issue here: ACH staff's decisions regarding whether or not to refer

inmates to receive outside healthcare. After reviewing this circuit's case law in

this area, the court concludes that "meaningful review" requires specific review of

the actual challenged decision. *See, e.g.*, *Doe*, 604 F.3d at 1264–65 (challenged

disciplinary board decision was a recommendation subject to review by the

Superintendent); *Denno*, 218 F.3d at 1276–77 (challenged school suspension

subject to review by an area assistant superintendent); *Scala*, 116 F.3d at 1402

(civil service board had the authority to review challenged termination decision);

*Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (city manager had the

authority to reverse police chief's employment decisions); *Manor Healthcare*

*Corp v. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991) (city council had power to

---

[15] Somewhat tellingly, when quoting this provision, Sheriff Dorning and Administrator Morrison omitted this language regarding cost-effectivity.

override the mayor's challenged veto on zoning matters).[16] Indeed, the court

cannot find an example of a case in which a court has found the generalized

accountability procedures cited by Sheriff Dorning to constitute meaningful

review.[17]

_____

[16] Sheriff Dorning contends "[o]fficials and jail staff 'are entitled to rely on medical judgments made by medical professionals responsible for prison care.'" Doc. 20 at 11 n. 7 (quoting *Carr v. Marshall Cnty. Sheriff's Office*, 4:11-cv-02834-RBP, 2013 WL 1834471, at *7 (N.D. Ala. Apr. 30, 2013) (quoting *Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006))); doc. 33 at 12 n. 9 (same). Sheriff Dorning is correct that *Carr*, *Williams*, and the cases that *Williams* relies upon stand for the basic premise that an official cannot be deliberately indifferent to a serious medical need solely for relying on the opinions of medical professionals. Here, however, the plaintiff's claim goes far beyond that; she contends that Sheriff Dorning knew of deficiencies in ACH's policies and practices and did nothing. *See, e.g.*, doc. 8 at 19 ("Dorning, Morrison, and the correctional officers they supervised, however, were well aware that ACH provided substandard and frequently inhumane medical care."); *id*. at 12 ("Dorning and Morrison made it clear to correctional officers that inmate healthcare costs were a problem at the jail, that one trip to the hospital could potentially blow the county's healthcare budget, and that they needed to cooperate with ACH to control costs."); *id*. at 16 ("Dorning knows from years of experience with ACH and from ACH's failure to respond to the deaths themselves and to other incidents, that ACH will conduct no evaluation and institute no training or other changes."); *id*. at 20 (Dorning and Madison County were aware of ACH's business model, were aware ACH put cost control over inmate health and safety, yet retained ACH as the contractor . . . because it saved the county money."); *id*. at 21 ("In order to control costs, defendant ACH, with the knowledge and consent of defendants Dorning and Morrison, staffed the Madison County Jail inadequately, hired sub-standard medical personnel willing to put costs over inmate health and safety, denied inmates medications, and delayed or denied medically-necessary referrals to outside providers.").

[17] *But see Robinson v. Integrative Det. Health Servs.*, No. 3:12-cv-20(CAR), 2014 WL 1314947, at *10 (M.D. Ga. Mar. 28, 2014). In *Robinson*, the court denied Hart County, Georgia's motion for summary judgment, finding it could be liable for the deliberate indifference of the medical provider it contracted with to provide medical services at the county jail because the plaintiff submitted evidence that the provider's actions were not subject to meaningful review. *See id.* at *9 ("No provision in the contract requires that IDHS report to Sheriff Cleveland, the jail administrator, or any other county official regarding the quality of medical services or the manner in which those services are provided. Thus, the contract suggests IDHS's decisions were not subject to meaningful administrative review.").

However, another aspect of the plaintiff's delegation theory gives the court pause. "In *Pembaur*, the Court articulated [a] . . . test for determining when a[n] . . . act of a municipal officer subject *the municipality* to liability under section 1983." *Manor Healthcare*, 929 F.2d at 637 (emphasis added). The court cannot find any binding or persuasive authority[18] standing for the premise that *Pembaur*'s delegation theory can be extended to holding a municipal *official* liable in his individual capacity. *See* doc. 8 at 2 (stating that Sheriff Dorning "is sued in his individual capacity only"); *see also Doe*, 604 F.3d at 1264 (plaintiff sought to hold county school board liable for action of administrators); *Denno*, 218 F.3d at 1277 (11th Cir. 2000) (same); *Scala*, 116 F.3d at 1397 (plaintiff sought to hold city liable for actions of its city manager and his subordinate); *Hill*, 74 F.3d at 1152 (plaintiff sought to hold city liable for the actions of its police chief); *Manor Healthcare*, 929 F.2d at 638 (plaintiff sough to hold city liable to the actions of its

_____

[18] The only case the court has found in which a court allowed a § 1983 claim to proceed against an individual official rather than a municipality is *Kimbrough v. City of Cocoa Beach*, in which the court denied the sheriff of Brevard County, Florida's motion for summary judgment, finding he could be liable for the actions of the medical director of the county jail's private healthcare provider because the plaintiff submitted evidence that the medical director's decisions were not subject to meaningful review. 2007 WL 113996, at *3. However, the case *Kimbrough* cites for the position that "the Sheriff may be liable under § 1983 for the single act of a final policymaker," *id*. (citing *Mandel v. Doe*, 888 F.2d 783, 791–92 (11th Cir. 1989)), involved a plaintiff's § 1983 claim against Escambia County, Florida based on a final policymaker theory, not a § 1983 claim against an individual, *id.* While the court is open to alternative explanations, it seems quite possible that *Kimbrough* was based on a misunderstanding regarding the applicability of final policymaker liability.

mayor); *Robinson v. Integrative Det. Health Servs., Inc.*, No. 3:12-cv-20 (CAR), 2014 WL 1314947, at *8 (M.D. Ga. Mar. 28, 2014) (plaintiff sought to hold county liable for the actions of a healthcare provider to whom its sheriff had delegated authority). Because the plaintiff has not had an opportunity to respond to the court's concerns,[19] the court will not dismiss this portion of the plaintiff's claim at this junction. Instead, the court gives the plaintiff until September 11, 2015 to submit additional briefing addressing the court's concerns. The defendant's response, if any, is due by September 18. The parties briefs are limited to seven pages

In sum, for largely the same reasons that the County's motion fails, except for the limited issue regrading Sheriff Dorning that is subject to further briefing, Sheriff Dorning and Administrator Morrison's motion to dismiss is **DENIED**.

### D. Williams' motion to dismiss

Dr. Williams moves the court to dismiss the claim for negligence and/or wantonness asserted against him. Doc. 22 at 1.The claim essentially is one for medical malpractice, and, as such, it is governed by the Alabama Medical Liability Act ("AMLA"). *See* Ala. Code § 6-5-551 ("In any action for injury, damages, or

---

[19] To throw a further wrinkle into this issue, "Alabama sheriffs are not county policymakers in their daily management of county jails." *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998).

wrongful death, whether in contract or in tort, against a health care provider for

breach of the standard of care, whether resulting from acts or omissions in

providing health care, or the hiring, training, supervision, retention, or termination

of care givers, the Alabama Medical Liability Act shall govern the parameters of

discovery and all aspects of the action."). The AMLA requires a complaint to

include "a detailed specification and factual description of each act and omission

alleged by plaintiff to render the health care provider liable to plaintiff and shall

include when feasible and ascertainable the date, time, and place of the act or

acts." *Id*. Courts have interpreted that statutory provision as requiring a plaintiff to

give his defendant "'fair notice of the allegedly negligent act.'" *Betts v. Eli Lilly &*

*Co.*, 435 F. Supp. 2d 1180, 1188 (S.D. Ala. 2006) (quoting *Mikkelsen v. Salama*,

619 So. 2d 1382, 1384 (Ala. 1993)). "Any complaint which fails to include such

detailed specification and factual description of each act and omission shall be

subject to dismissal for failure to state a claim upon which relief may be granted."

*Id*.

According to Dr. Williams, the amended complaint does not contain a

sufficiently detailed specification and factual description of his alleged acts and/or

omissions, including the relevant dates, times, and places. Doc. 22 at 4. The court

disagrees. It is clear from the amended complaint that the alleged acts and/or

omissions by Dr. Williams occurred at the Madison County Jail between October 29, 2013, when Dr. Williams first examined Jefferson, and approximately 9:09 p.m. on October 31, 2013, when ACH staff decided to transport Jefferson to the hospital. Doc. 8 at 5–7. During that well-defined time period, the plaintiff alleges that Dr. Williams was aware of Jefferson's obviously severe medical condition, but that the only effort he made to provide her with treatment, prescribing laxatives, was inadequate. *Id*. at 5. She also contends that Dr. Williams' treatment of Jefferson fell below the applicable standard of correctional health care. *Id*. at 8. Finally, the plaintiff alleges that Jefferson suffered and died as a result of Dr. Williams' failure to provide adequate care. *Id*. at 7. These allegations are more than sufficient to place Dr. Williams on fair notice of the plaintiff's claim against him. Accordingly, Dr. Williams' motion to dismiss is due to be **DENIED**.

## IV. CONCLUSION

For the reasons explained above, except as to the plaintiff's delegated authority claim against Sheriff Dorning, which as discussed above, require further feedback from the parties, the County, Sheriff Dorning and Administrator Morrison, and Williams' motions to dismiss are **DENIED.**

**DONE** this 28th day of August, 2015.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE