Medical Opinions by request from Hank Sherrod         Exhibit 2A

The following statement is provided at the request of Hank Sherrod in the matter of the case Jefferson v. Madison County, et al. More specifically my statement focuses upon the medical care provided to Tanisha Jefferson prior to her death. In preparation of this statement, I have reviewed numerous documents produced during and subsequent to her incarceration in the Madison County Jail. Records reviewed include written statements by fellow inmates, expert testimony by Denise Panosky RN, institutional nursing records and reports, autopsy report, EMS documents and certified transcript of a deposition given by Felicia Deshields, corrections officer.

I am charging Mr. Sherrod $500 per hour. My qualifications and publications are stated in my CV. I have not testified as an expert in a trial or deposition in the past 4 years.

By way of summary, as I understand the events it appears that Ms Jefferson was processed on 10/13/2013 into the Madison County Jail and remained there as an inmate until she was taken to Huntsville Hospital 10/31/2013 where she was pronounced dead by the physician who evaluated her upon her arrival. According to the medical records provided, five days following her arrival Ms Jefferson first sought medical attention for what she described as constipation, abdominal pain and vaginal yeast infection. She was evaluated by a nurse and administered laxative medication (which she vomited), as well as stool softeners and the antibiotic Flagyl. Over the ensuing days based upon her documented and repeated requests for medical evaluation, the abdominal symptoms (pain and inability to defecate) not only persisted but seemed to intensify. Her cell mates describe that she was unable to eat, participate in routine activity and was plagued by intermittent nausea and vomiting. Based upon the documentation provided, it appears that despite her repeated requests she was only physically evaluated by a physician once, and in many ways her symptoms and escalating issues were largely ignored or minimized by the attending nursing staff. Finally on the evening of 10/31/13 there are two separate SOA entries which provide conflicting clinical information. The first which is timed 2010 describes Ms Jefferson in extremis with severely elevated heart rate (140), rapid and labored respirations (rate 26), and unobtainable blood pressure. Despite these vital signs, she is described as "alert and oriented". Thirty five minutes later her heart rate had decreased to 88, her respiratory rate was still elevated at 22 and she still had an "unobtainable blood pressure". Shortly thereafter she became unresponsive and CPR was initiated as was monitoring of her cardiac rhythm by AED device. The records document that the AED readings indicated she was in PEA, (pulseless electrical activity) and no electrical shocks were administered. These series of events culminated in notifying first responders and her subsequent transfer to Huntsville Hospital.

Based upon the clinical history and documentation provided, it is my opinion that Ms Jefferson received inadequate and negligent care during her incarceration which culminated in her demise. It is also my opinion that were she provided a timely, suitable and comprehensive evaluation her death could likely have been prevented.

The cause of death documented in the autopsy report is cardiomyopathy. Supportive findings within the autopsy include congestion of the lungs and liver (which suggest inadequate cardiac function) as

well as nephrosclerosis in her kidneys. Additionally she has evidence of left and right ventricular hypertrophy and some minor fibrosis of the left ventricle. While she was noted to have some fatty streaks in her aorta, (suggestive of early atherosclerosis) her coronary arteries were normal and without atherosclerotic plaque. Further pertinent information provided in the autopsy indicates that the gastro-intestinal (GI) system appears unremarkable and normal externally. As this relates to her clinical course, there is specific mention that both the small and large intestine appear normal.

From a medical standpoint, the autopsy findings conflict with the nature of Ms Jefferson's persistent complaints which were primarily abdominal and GI related. I raise this to indicate that while her complaints as documented by medical personnel did not point specifically to a cardiac abnormality, the repetitive and apparent escalating nature of her complaints should have prompted a more comprehensive and specific evaluation by a physician or in a hospital setting. Had this occurred additional causes or explanations for her abdominal complaints could have been investigated and a more pointed treatment plan initiated.

Interestingly one component of her prescribed therapy included frequent hydration via water consumption and ambulation every 3-4 hours. Based upon the supporting statements by her co-inmates, I doubt this was physically possible as she had lost ability to walk independently and experienced frequent vomiting. Additionally regardless of the specific mechanism, it is not uncommon for patients to experience GI symptomatology (abdominal pain, nausea and constipation) as a component of deteriorating cardiac function.

Based on the information I have reviewed, including inmate statements indicating more severe symptoms than are shown on the face of the jail medical record in the days before Ms. Jefferson's death, it is my opinion that, more likely than not, Ms Jefferson's complaints were in fact indicators of cardiac deterioration, which would have been discovered as part of a comprehensive medical evaluation, presumably at a local hospital. Her repetitive requests for help and the severity of her complaints indicate that specific and comprehensive medical evaluation was indicated. Even if the focus of her evaluation were centered upon her GI symptoms, the accompanying investigation during such patient encounters would have considered all possible causes or etiologies for her discomfort.

In conclusion, based upon the data reviewed and the explanation provided above, I assert that Ms Jefferson received inadequate and negligent care during her incarceration. I also feel that were she evaluated in a proper setting, according to the standards of care, her death could likely have been prevented.

Dated January 25, 2017

_[signature]_

Mark A. Patterson, MD, FACS